UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Case No. Criminal No. 10-10193-JLT |
| | ) |
| v. | ) |
| | ) |
| JEFFREY SMITH | ) |
| | ) |
| Defendant | ) |
| | ) |

**DEFENDANT JEFFREY SMITH'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE**

Defendant Jeffrey Smith respectfully requests that the Court sentence him to a term of imprisonment below the applicable Guidelines range based on the factors set forth below.

**I.  THE DEFENDANT CLEARLY SUFFERS FROM ASPERGER'S DISORDER (AD)**

The defendant has been evaluated by Dr. Daniel Rosenn, a psychiatrist specializing in evaluating and treating persons with Asperger's Disorder (AD).  Dr. Rosenn has provided a written report dated November 12, 2010.  (*See* Attachment 1 filed under seal).[1]  Dr. Rosenn concludes in his report that the defendant suffers from AD.  Although the report is lengthy with data, observations and conclusions, certain items are worth specially noting here.[2]

**A.  The Defendant's Developmental History**

---

[1] Dr. Rosenn has evaluated, consulted about, or treated more than 3000 individuals with Asperger's or related disorders.  He is also a founding Board member of the Asperger's Association of New England.  Rosenn Report at 3.  (See Dr. Rosnn's curriculum vitae annexed hereto as Attachment 2, filed under seal.)

[2] Dr. Rosenn has interviewed the defendant again recently and will be available at sentencing to make an oral supplemental report should the Court so desire.

1

In his report, Dr. Rosenn notes that the defendant's earliest history is "highly characteristic of children and adolescents with Asperger's Disorder (AD)."  Testing responses from both the defendant's parents and his only sibling (a brother) presents strong statistical support for the diagnosis.  His (1) motor development (slow to walk, clumsy and awkward); (2) sensory integration (auditory hypersensitivity); (3) attentional dysregulation (hyper-focus on the one hand yet distractable, restless and very impulsive on the other hand); (4) speech and language acquisition (first placed as mentally retarded); (5) socially isolated (difficulty making friends and mercilessly teased); (6) rigidity (unable to ignore small mistakes and obsessively correcting others); (7) cognition (highly flawed social judgment) and interests (encyclopedic knowledge of certain TV shows as well as mass transit routes and schedules) all bear witness to the disorder.  Rosenn Report at 6-10.

### B.      Office Testing and Clinical Interviews

Testing showed that the defendant has great difficulty in seeing the larger picture.  He is "extremely literal and concrete" and unable to understand simple jokes normed at the elementary school level – or proverbs as well.  For example, when asked for the meaning of the expression, "People in glass houses shouldn't throw stones," he replied, "People inside the house should not be throwing stones because it will break the glass." Rosenn Report at 18.

### C.      Confirmatory observations of other clinicians

After his initial arrest, the defendant was evaluated and treated by Dr. John Cusack, who prepared for the court a report, which contained a reference to a therapist (Mr. Harrison) whom the defendant saw for almost ten years.  Dr. Cusack noted, "When

2

this writer suggested that the condition Mr. Harrison was describing had an Asperger's Disorder like quality, Mr. Harrison concurred and wondered about these qualities in Mr. Smith." (*See* Attachment 3, filed under seal, at 5).

Further, a preliminary interview Dr. Martin Kafka of McLean Hospital in Belmont, MA in July of 2010 led Dr. Kafka to diagnose the defendant as having Possible Autism Spectrum Disorder. (PSR at ¶ 98).[3]

## II.   ASPERGER'S DISORDER GENERALLY

Asperger's Disorder is a relatively new diagnosis (35 years old) for individuals who have "restrictive, repetitive, and stereotyped patterns of behavior, defects in communication skills, and difficulties understanding social reciprocity." Rosenn Report at 4. Persons suffering with AD tend to have at least average intelligence and generally normal language skills. Therefore, when undiagnosed adults have difficulties, "they are often not recognized as having a neurologically based handicap, and their behaviors are often misconstrued as purposeful, immoral, egotistical, or antisocial. On closer inspection, adults with AD who run afoul of the law often behave with little regard to their own self-interest and often do not fully understand the consequences or impact of their behaviors." Rosenn Report at 4-5.

## III.  THE OFFENSE

### A.   Offense Conduct

The Presentence Report describes the defendant mailing thirty-one letters to predominantly Afro-American institutions, a Microsoft office and private residences in Massachusetts, Rhode Island and North Carolina. PSR at ¶ 9. As part of the offense

---

[3] Each clinician has also suggested additional diagnoses such as major depressive disorder and generalized anxiety disorder. *See e.g.* Rosenn Report at 23.

3

conduct, eleven of these letters reference racial animus toward blacks and minorities using as "senders or addressor" the names of the defendant's supervisors at Securitas or Securitas account or branch managers.[4]  Additionally, two letters to private residences contained threats.

Though not considered part of the relevant conduct, eighteen additional letters were sent to private individuals and residences in Massachusetts bearing the pseudonym "Hayward Dublomi" as the sender and containing derogatory references to Securitas and certain supervisors.  PSR at ¶ 9 and ¶¶ 66-72 (not relevant conduct).

### B. Background to the offense conduct

The defendant worked as a nighttime security guard for Securitas Security for approximately ten years prior to this offense.  PSR at ¶ 111.  He also worked at several predecessor companies in the same role for another ten years.[5]  PSR at ¶¶ 112-113.

The Securitas job was central to his life. The night shift limited his contact with the public.  The job was very routinized, i.e., it was rote, required only linear processing skills, with little or no pressure – "perfect" for the defendant.  Rosenn Report at 13.  He was named employee of the month on at least one occasion.  Rosenn Report at 20.

However, approximately a year or so before the offenses in question, two job-related threats arose for the defendant.  First, his new supervisors became critical of his performance. Rosenn Report at 20.  They believed that everything he did was too slow, even though the defendant contemplated eliminating his breaks to please them.  Rosenn

---

[4] There is a juvenile quality to many of the letters, *e.g*.: (1) placing an actual name as the sender on the return address portion of the envelopes and (2) signing certain letters or designating as the sender "Hawyward Dublomi," a childish twist on "Hey would you blow me?"

[5] Dr. Rosenn notes in his report that it is unusual for adults with AD to maintain employment for as long as the defendant had managed without encountering difficulties.  Rosenn Report at 13.

Report at 20.  (One called him a "retard.")  Rosenn Report at 21.[6]  Second, these same new supervisors caused problems for his good friend at work, a black female.[7]  PSR ¶ 9

In the defendant's mind the anticipated job loss was an enormous threat and a potentially devastating loss to the stability of his life.  Rosenn Report at p. 13.  That fear was compounded by the additional threat to his single female friend at work.  Worse, he felt helpless in the face of his immediate supervisor's complaints.  Rosenn Report at 15.

### IV. THE ASPERGER'S DISORDER GENERATES MULTIPLE COGNITIVE AND BEHAVIORAL CONSEQUENCES DIRECTLY RELATED TO THE OFFENSE CONDUCT AND THEREFORE IS A BASIS FOR EITHER DOWNWARD DEPARTURE AND/OR VARIANCE

#### A. The Defendant's Mental And Emotional Status Warrants A Downward Departure Pursuant To Both USSG § 5H1.3 And USSG § 2A6.1, Commentary, Note 4

The United States Sentencing Guidelines provide several alternative bases for departure in the context of the defendant's Asperger's Disorder.

First, USSG § 5H1.3 (Mental and Emotional Conditions) provides that a defendant's mental and emotional status may warrant a downward departure.[8]

Second, USSG § 2A6.1, Commentary, Note 4 recognizes "that offenses covered by this guideline may include a particularly wide range of conduct and that it is not possible to include all of the potentially relevant circumstances in the offense level.

---

[6] In one instance the defendant fell asleep.   It should be noted that during the defendant's daytime hours at this point, he often was awake trying to please his parents by taking them from place to place and running their errands.  Rosenn Report at 11.

[7] Neither Dr. Rosenn nor the defendant's brother found any evidence that the defendant was racist – actually quite the contrary.  Rosenn Report at 8-9.  PSR at ¶ 89.  (An incident in Medford, MA some ten years prior similarly involved an attempt by the defendant to pin the label of racism on a neighbor as a means of retaliation.  See PSR at ¶ 26.  The circumstances surrounding a more minor incident twenty-five years before while the defendant was in college are unclear.  Rosenn Report at 11.)

[8] USSG §5H1.3 provides that, "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

Factors not incorporated in the guideline may be considered by the court in determining whether a departure from the guideline is warranted." Here, the defendant's mental and emotional conditions take the case outside the heartland of threat cases and warrant a downward departure.

Dr. Rosenn, in his report, clearly expresses his strong belief that the defendant's "lifelong, chronic Asperger's Disorder definitely reduced his capacity to control and fully understand his criminal offenses." Rosenn Report at 19. Simply put, the defendant cannot comprehend and react appropriately when in certain stressful situations that are perceived through the AD lens as either life-threatening or unjust. Dr. Rosenn articulates the basis for his opinion in great detail in his report and it is not economical to simply repeat the report verbatim here with the report itself attached. Simply put, a departure – or variance – is warranted on that basis.

**B.     The Grouping Requirements Of USSG §3D1.4 Result In An Excessive Adjustment And Warrant A Downward Departure**

Pursuant to the Commentary for USSG § 3D1.4 (providing that, "[i]n unusual circumstances, the approach adopted in this section could produce adjustments for the additional counts that are inadequate or excessive"), the grouping requirements of USSG §3D1.4 result in an excessive adjustment and warrant a downward departure under the totality of the circumstances of this case.

Dr. Rosenn has explained why persons suffering from AD have great difficulty with compulsivity, that is, with stopping or shutting down a particular behavior.[9] Rosenn Report at 22. (Besides the repetitiveness of the actions of many AD suffers, in this case, Dr. Rosenn believes that the defendant not only did not intend actual violence but that his

---

[9] This issue explains in part the calls to his direct former supervisor even after his arrest. PSR at ¶¶ 29-31. *See generally*, Rosenn Report at 15.

6

"impairments in empathy prevented him from understanding the pain these accusations might evoke in black people themselves." Rosen Report at 23.) Dr. Rosenn adds, "The very number and repetitive aspect of the letters is reflective of his perseverative Asperger's style rather than a pathological impulse to widen the scope of his criminal activities." Rosenn Report at 23.  For these additional reasons, a downward departure or variance is warranted.

V.     **NEXT STEPS**

Undersigned counsel, as well as Dr. Rosenn, as well as the defendant's brother (Steve) and the defendant's mother have all been in contact with the Asperger's Association of New England regarding a package of services that will potentially address the defendant's various needs: therapy, a life coach, a job, group activities and the like. However, the defendant's parents are elderly.  They are likely to have some difficulty providing a preferred, stable environment for the defendant in both the near and long term.  His brother lives in the home but is dealing with substantial, personal health issues.  Therefore, undersigned counsel has sought placement (or services) from the Massachusetts Department of Mental Health (DMH).  The original application was denied.  Undersigned counsel has filed an appeal, which is pending.  (See Attachment 4, filed under seal.)   By telephone, undersigned counsel has also informed the Department of Mental Health's General Counsel's Office of the importance of providing services at this time.  The only response to undersigned counsel has been that the DMH administrative appeal process must be followed.

## VI. CONCLUSION

Smith respectfully requests that the Court sentence him below the applicable Guidelines range.[10]

                                        Respectfully submitted,

                                        /s/ Thomas M. Hoopes
                                        Thomas M. Hoopes (BBO No. 239340)
                                        LIBBYHOOPES, P.C.
                                        175 Federal Street
                                        Boston, MA 02110
                                        (617) 338-9300

Dated:   July 11, 2011

## CERTIFICATE OF SERVICE

I, Thomas M. Hoopes, hereby certify that I served a copy of this notice electronically upon S. Theodore Merritt, Assistant United States Attorney.

                                        /s/ Thomas M. Hoopes
                                        Thomas M. Hoopes

---

[10] Given the defendant's limited resources and the likelihood that any part of these resources will likely be needed for aftercare Asperger treatment programs, the defendant requests that a fine be waived.